**Brian Paul CHESNA,**

v.

**UNITED STATES DEPARTMENT OF DEFENSE.**

**Case No. 3:93–CV–823 (JAC).**

United States District Court, D. Connecticut.

May 18, 1993.

John B. Hughes, Asst. U.S. Atty., New Haven, CT, for petitioner.

Stephen M. Reck, O'Brien, Shafner, Stuart, Kelly & Morris, Groton, CT, for respondent.

## RULING ON RESPONDENT'S MOTION TO DISMISS

JOSÉ A. CABRANES, Chief Judge:

This action seeks judicial review of a decision by the United States Department of Defense to revoke the petitioner's security clearance. Pending before the court is the respondent's Motion to Dismiss or, in the Alternative, for Summary Judgment (filed May 5, 1993). The petitioner filed a memorandum in response to this motion on May 11, 1993, and the court heard oral argument on May 13, 1993.

### BACKGROUND

The petitioner, Brian Paul Chesna ("Chesna"), is employed as a sheetmetal worker by the General Dynamics Corporation, Electric Boat Division, in Groton, Connecticut. He holds a security clearance issued by the respondent, the United States Department of Defense ("the Department"). The Directorate for Industrial Security Clearance Review, a unit within the Department, determined on October 21, 1991 that Chesna's security clearance should be revoked. Chesna sought review of that decision, and, in accordance with his request, a hearing on the revocation was held before Administrative Law Judge ("ALJ") Elizabeth Matchinski on June 25, 1992. The ALJ issued a ruling on August 26, 1992, upholding the decision to revoke the security clearance. On March 26, 1993, the Department's Appeal Board affirmed the ALJ's decision.

Having exhausted his administrative remedies, Chesna commenced this action on April 19, 1993 by filing a petition for review of the Department's decision together with an ap-

plication for a temporary restraining order.[1] After a hearing on the record by telephone on April 26, 1993, the court entered an order restraining the Department from taking any steps to implement the revocation of Chesna's security clearance.[2] At the same time, the court set a schedule for the expedited briefing of the Department's anticipated motion to dismiss. Thereafter, the court dissolved the temporary restraining order and extended the briefing schedule, based on an agreement between the parties to maintain the status quo pending the court's decision on the motion to dismiss.

## DISCUSSION

The respondent contends that this court lacks subject matter jurisdiction over all of the petitioner's claims and moves to dismiss those claims pursuant to Fed.R.Civ.P. 12(b)(1).[3] In the alternative, the respondent argues that the court should dismiss this action pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.[4] Finally, the respondent argues that if this action is not dismissed, the court should grant summary judgment against the petitioner on all claims pursuant to Fed. R.Civ.P. 56(b).[5] The petitioner objects to the respondent's motion in all respects.[6]

At the threshold, this court must determine whether and to what extent it has subject matter jurisdiction—that is, the power to hear this case. The court will also consider, as necessary, the respondent's motion to dismiss pursuant to Rule 12(b)(6) and its motion for summary judgment with respect to any remaining aspects of the petitioner's claims.

## I

The Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, gives the federal courts jurisdiction to exercise judicial review over any "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. The petitioner has asserted, and the respondent does not dispute, that the Department's decision to revoke the petitioner's security clearance is a "final agency action" for purposes of establishing jurisdiction.

The APA creates two exceptions to the grant of jurisdiction in Section 704: the courts may not review agency decisions where statutes preclude judicial review, 5 U.S.C. § 701(a)(1), or where agency action is "committed to agency discretion by law," 5 U.S.C. § 701(a)(2). The latter exception—subsection 701(a)(2)—applies "in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.' " *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 821, 28 L.Ed.2d 136 (1971) (citations omitted). Where a decision has been committed to an agency's discretion by law, the federal courts lack jurisdiction to review that decision because the courts "would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney,* 470 U.S. 821, 830, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985).

In most cases, the standards governing an agency's exercise of discretion are established by the statute that authorizes the agency to take action. In this case, however, the agency's decisionmaking authority is grounded not in a statute but in an executive order. The Department of Defense derives its authority to make security-clearance decisions from Executive Order 10865, which authorizes the agency to establish a security-clearance program to prevent "unauthorized disclosures of classified information relating to the national defense." *See* Executive Order No. 10865, 25 Fed.Reg. 1583 (1963), as amended by Executive Order No. 10909, 26

---

1. *See* Petition for Review of Order of Department of Defense (filed April 19, 1993) ("Petition").

2. *See* Transcript of Hearing of April 26, 1993 (filed April 27, 1993) (doc. # 7).

3. *See* Memorandum in Support of Respondent's Motion to Dismiss Petition for Review (filed May 5, 1993) ("Respondent's Memorandum"), at 3–7.

4. *See id.* at 7–10.

5. *See id.* at 10–13.

6. *See* Memorandum in Opposition to Respondent's Motion to Dismiss Petition for Review (filed May 11, 1993) ("Petitioner's Memorandum").

Fed.Reg. 508 (1961) (together, "Executive Order 10865").[7] This executive order provides that authorization for access to classified information may be granted only upon a finding that granting the clearance is "clearly consistent with the national interest." *See id.* Executive Order 10865 does not specify whether the courts have the power to review the Department's compliance with this standard. *See id.* As a result, the availability of judicial review of agencies' security-clearance decisions remains unclear.

When a statute that authorizes agency action fails to address the availability of judicial review, the courts generally assume that Congress intended to permit judicial review. *See Block v. Community Nutrition Institute,* 467 U.S. 340, 349, 104 S.Ct. 2450, 2455, 81 L.Ed.2d 270 (1984); *see also Abbott Laboratories v. Gardner,* 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967). This presumption of reviewability is, arguably, somewhat less forceful when agency action is based on authority derived not from congressional action but from the inherent constitutional authority of the President. *See Dorfmont v. Brown,* 913 F.2d 1399, 1405 (9th Cir.1990) (Kozinski, J., concurring) (noting that "the Constitution erects barriers to judicial review that even Congress may not override"). More importantly, the presumption of reviewability is entirely inapplicable in matters concerning national security. *See Egan,* 484 U.S. at 527, 108 S.Ct. at 824. (holding, in context of a security-clearance decision, that presumption of reviewability "runs aground when it encounters concerns of national security").

Given its reluctance to intrude on the authority of the executive branch in matters of national security, the Supreme Court has decided on two occasions that the merits of security-clearance decisions are not subject to review by outside bodies. In *Egan,* the Court concluded that the Civil Service Reform Act, 5 U.S.C. § 7512, does not authorize the Merit Systems Protection Board—an independent agency—to review the merits of

security-clearance decisions made by the Department of Defense. *Egan,* 484 U.S. at 529–30, 108 S.Ct. at 824–25. Subsequently, the Court held that the National Security Act, 50 U.S.C. § 403(c), commits security-clearance decisions to the discretion of the Director of Central Intelligence and therefore precludes judicial review of those decisions. *See Webster v. Doe,* 486 U.S. 592, 601, 108 S.Ct. 2047, 2052, 100 L.Ed.2d 632 (1988). Neither *Egan* nor *Webster* expressly holds that federal courts lack jurisdiction to review the security-clearance decisions of the Department of Defense. But these decisions do establish, at least as a general matter, that non-expert bodies outside the executive branch cannot review the merits of executive-branch officials' security-clearance decisions.

Our Court of Appeals has not considered the issue of whether federal courts have jurisdiction to review the merits of security-clearance decisions of the Department of Defense. In other circuits, however, courts of appeals have uniformly held that federal courts lack jurisdiction to review the merits of such decisions. In a leading case, the Court of Appeals for the Ninth Circuit held that "[w]e have no more business reviewing the merits of a decision to grant or revoke a security clearance than does the MSPB [Merit Systems Protection Board]." *Dorfmont v. Brown,* 913 F.2d at 1401 (holding that, under *Egan,* federal courts lack jurisdiction to review security-clearance decisions of Department of Defense). Courts of appeals in other circuits, and district courts in this circuit, have reached similar conclusions. *See Jamil v. Secretary, Department of Defense,* 910 F.2d 1203, 1208 (4th Cir.1990); *Hill v. Department of Air Force,* 844 F.2d 1407, 1411 (10th Cir.), *cert. denied,* 488 U.S. 825, 109 S.Ct. 73, 102 L.Ed.2d 49 (1988); *Ryan v. Defense Industrial Security Clearance Office,* Civil Action No. H–90–424 (PCD), slip op., at 4 (D.Conn. February 21, 1991); *Williams v. Reilly,* 743 F.Supp. 168, 171 (S.D.N.Y.1990).

In light of the foregoing authorities, this court concludes that it lacks jurisdiction to

---

7. The President's authority to issue Executive Order 10865 flows primarily from his inherent powers as "Commander in Chief of the Army and Navy of the United States" under Article II, Section 2 of the United States Constitution and

"exists quite apart from any explicit congressional grant." *See Department of Navy v. Egan,* 484 U.S. 518, 527, 108 S.Ct. 818, 824, 98 L.Ed.2d 918 (1988).

review the merits of the Department's decision to revoke the petitioner's security clearance. This conclusion leaves open two possible bases for the exercise of jurisdiction in this case, each of which will be considered below.

## II

■ Most courts which have found that they lack jurisdiction to review the *merits* of security-clearance decisions have nevertheless concluded that they have jurisdiction to consider two other types of challenges to such decisions: (1) challenges based on the agency's alleged violation of its own regulations and (2) challenges based on the agency's alleged violation of the plaintiff's constitutional rights. The petitioner asserts that both of these potential bases of jurisdiction are applicable here. The court shall consider each in turn.

### A

The Supreme Court has held that federal courts have jurisdiction over claims based on an agency's alleged failure to comply with its own regulations. *See Webster,* 486 U.S. at 602 n. 7, 108 S.Ct. at 2053 n. 7 (noting that agency "concedes" that federal courts have jurisdiction over claims that agency's security-clearance decision violated its own regulations); *see also Service v. Dulles,* 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957) (holding that federal courts have power to review an agency's actions to ensure that its own regulations have been followed). At the same time, courts have generally held that they lack jurisdiction over claims based on violations of an agency's regulations where those claims require, in effect, a review of the merits of a security-clearance decision. *See, e.g., Dorfmont,* 913 F.2d at 1402 n. 1 (holding that court lacked jurisdiction to determine

whether Department of Defense had complied with regulation requiring it to determine whether granting security clearance was "clearly consistent with the national interest"); *Doe v. Schachter,* 804 F.Supp. 53, 62 (N.D.Cal.1992) (holding that court *does* have jurisdiction where agency's compliance with its regulations *can* be determined without reviewing merits of agency's decision).

The petitioner claims that the Department violated Section F.3 of Department of Defense Directive 5520.6 ("Directive 5220.6"), which requires that security-clearance determinations reflect "an overall commonsense [sic] decision." [8] The nature of this claim is not entirely clear. On one hand, the petitioner appears to assert that the Department violated Directive 5220.6 because the decision to revoke his security clearance was not *in fact* a "commonsense decision." [9] On the other hand, the petitioner also contends that "the Department of Defense failed to even *consider* its own regulation." [10] These claims are significantly different for jurisdictional purposes, and will therefore be considered separately.

### (1)

The court concludes that it lacks jurisdiction over the petitioner's claims to the extent that the petitioner asks the court to determine whether the revocation of his security clearance was *in fact* a "commonsense decision." To make such a determination, the court would have to evaluate the facts and the reasoning—that is, the merits—of the agency's decision. This the court cannot do. *See Egan,* 484 U.S. at 529, 108 S.Ct. at 825 (holding that "it is not reasonably possible for an outside nonexpert body to review the substance" of security-clearance decisions); *see also Dorfmont,* 913 F.2d at 1402, n. 1

8. Directive 5220.6, § F.3, provides in full as follows:
    Each personnel security determination must be a fair and impartial overall commonsense [sic] decision based upon a consideration of all available information, both favorable and unfavorable, and must be arrived at by applying the standard that the granting (or continuance) of security clearance under this Directive may only be done upon a finding that to do so is clearly consistent with the national interest.

Respondent's Memorandum, Exh. D, at 5.

9. *See* Petitioner's Memorandum, at 3 (arguing that "if the Department of Defense followed its requirement to render 'an overall common sense decision' then there was no way that his security clearance could be revoked").

10. *Id.* at 9–10 (emphasis supplied).

(holding that courts "would eviscerate *Egan*" if they exercised judicial review over claim that agency violated regulations which required it to determine whether granting security clearance was "clearly consistent with the national interest"). Accordingly, the defendant's motion to dismiss pursuant to Rule 12(b)(1) must be granted with respect to the claim that the Department violated Directive 5220.6 by failing to reach a "commonsense decision."

(2)

■■■ The court concludes that it does have jurisdiction over the petitioner's claims to the extent that the petitioner asks the court to determine whether the Department entirely *ignored* its obligation—under its own regulations—to make "an overall commonsense decision." *See Schachter*, 804 F.Supp. at 62–63 (finding jurisdiction over claim that unit within Department of Defense failed to consider "mitigating factors" as required by Directive 5220.6). The court concludes, however, that the petitioner has failed to raise a genuine issue of material fact with respect to this claim because both the decision of the ALJ and the decision of the Appeals Board recognize the applicability of the "commonsense decision" standard.[11] Accordingly, the court must grant summary judgment for the defendant with respect to the claim that the Department violated Directive 5220.6 by failing to consider its obligation to reach a "commonsense decision."

In sum, the court concludes that (1) the petitioner's claims must be dismissed for lack of subject matter jurisdiction to the extent that the petitioner alleges that the respondent's decision was not actually a "commonsense decision" and (2) summary judgment must be granted against the petitioner to the extent that he alleges that the respondent simply ignored the directive requiring it to make a "commonsense decision."

B

■■■ The sole remaining ground for jurisdiction over the plaintiff's claims is the jurisdiction of this court to consider constitutional challenges to agency action. The Supreme Court has held that federal courts have jurisdiction to consider "colorable constitutional claims" arising out of an agency's security-clearance decisions. *See Webster*, 486 U.S. at 603, 108 S.Ct. at 2053 (holding that courts have jurisdiction over due-process challenges to security-clearance decisions that are committed to discretion of CIA Director); *see also Johnson v. Robison*, 415 U.S. 361, 373–74, 94 S.Ct. 1160, 1168–69, 39 L.Ed.2d 389 (1974) (holding that where Congress intended to preclude judicial review of constitutional claims, its intent must be clear).

The reference in the *Webster* decision to "colorable" constitutional claims appears to suggest that courts should conduct some preliminary evaluation of the validity of constitutional claims as a means of determining whether subject matter jurisdiction exists. The Court appeared to establish, in other words, a distinction between "colorable" constitutional claims (over which the federal courts have jurisdiction) and "less-than-colorable" constitutional claims (over which the federal courts lack jurisdiction). This interpretation of *Webster* was adopted by the Court of Appeals for the Ninth Circuit in its *Dorfmont* decision. In that case, the Ninth Circuit held that it lacked jurisdiction to consider the plaintiff's due-process challenge to a security-clearance decision because the revocation of the clearance violated no property or liberty interest of the plaintiff. *See Dorfmont*, 913 F.2d at 1403–04. In summarizing its holding, the court stated:

> [Our prior holdings] stand for the proposition that federal courts may entertain colorable constitutional challenges to security clearance decisions. We hold only that a claim for denial of due process stemming from the revocation of a security clearance is not a colorable constitutional claim.

*Id.* at 1404.

The court's reasoning in *Dorfmont* is troublesome. In taking the view that its jurisdictional determination requires a decision on whether the constitutional claim is "color-

---

11. *See* Respondent's Memorandum, Exh. A, Determination of Administrative Law Judge Elizabeth M. Matchinski (August 26, 1992), at 6; *see* *also* Respondent's Memorandum, Exh. B, Department of Defense Appeal Board Determination (March 26, 1993), at 3.

able," the court finds it necessary to decide—in effect—whether the plaintiff has stated a claim upon which relief can be granted *before* it determines whether it has subject matter jurisdiction. This approach, if followed consistently, would require the courts to dismiss claims with prejudice pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction when those claims should in fact be dismissed *without* prejudice pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

In light of the concerns raised here, this court concludes that a "colorable constitutional claim" within the meaning of *Webster* is any constitutional claim that would otherwise be sufficient to establish federal jurisdiction: that is, any claim other than one that "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction" or one that is "wholly insubstantial and frivolous." *Bell v. Hood,* 327 U.S. 678, 682–83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946); *see also Spencer v. Casavilla,* 903 F.2d 171, 173 (2d Cir.1990). Under this standard for determining jurisdiction, courts should not dismiss claims for lack of subject matter jurisdiction even where they would have dismissed them under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *See Spencer,* 903 F.2d at 173.

The respondent has not contended, and the court does not find, that the petitioner's constitutional claims are "immaterial and made solely for the purpose of obtaining jurisdiction" or are "wholly insubstantial and frivolous." *Id.* (quoting *Bell,* 327 U.S. at 682–83, 66 S.Ct. at 776). Accordingly, the court concludes that the respondent's motion to dismiss the plaintiff's constitutional claims pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction must be denied.

### III

The court now turns to the respondent's motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. In considering motions to dismiss, the court must read the complaint generously and draw all inferences in favor of the plaintiff. *See generally Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Yoder v. Orthomolecular Nutrition Institute, Inc.,* 751 F.2d 555, 562 (2d Cir.1985). Indeed, for purposes of motions to dismiss only, the court is required to assume the allegations of the complaint are true. *See Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972).

In his petition for review, the petitioner asserts that the respondent's "actions, findings, and conclusions" are "contrary to constitutional right, power, privilege, or immunity." [12] This bald assertion is patently insufficient to state any constitutional claim: the petition makes no reference to any violation of the petitioner's rights under the Due Process Clause, nor does it refer to any of the other constitutional claims that the petitioner has described in his memorandum of law.[13] Given the complete absence of any specific allegations of constitutional violations, the court concludes that the petitioner's constitutional claims must be dismissed, without prejudice, pursuant to Rule 12(b)(6) for failure to state a claim on which relief can be granted.

### CONCLUSION

To summarize:

(1) with respect to the petitioner's claim that the respondent violated its own regulations because the revocation of the security clearance was not *in fact* "an overall commonsense decision," the respondent's motion to dismiss for lack of subject matter jurisdiction is GRANTED;

(2) with respect to the petitioner's claim that the respondent violated its own regulations because the respondent *ignored* its obligation to render "an overall commonsense decision," the respondent's motion for summary judgment is GRANTED;

(3) with respect to the petitioner's constitutional claims, the respondent's motion to dismiss is GRANTED and the constitutional

---

**12.** *See* Petition, at ¶ 9.

**13.** *See* Petitioner's Memorandum at 5–9.

claims are dismissed, without prejudice to renewal in an amended petition.

For the foregoing reasons, and in accordance with this ruling, the Government's Motion to Dismiss or, in the Alternative, for Summary Judgment (filed May 5, 1993) (doc. # 9) is hereby GRANTED. Accordingly, it is hereby ORDERED that:

(1) the petitioner may file an amended petition for review of the revocation of his security clearance by no later than May 31, 1993;

(2) the respondent shall file its response to any such petition within one week of service but in any event by no later than June 7, 1993; and

(3) the respondent shall take no action to effectuate its decision to revoke the petitioner's security clearance until further order of this court.

It is so ordered.